UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM T. DIVANE, JR.,
KENNETH J. BAUWENS,
MICHAEL J. CADDIGAN,
LARRY CRAWLEY,
SAMUEL EVANS,
TIM FOLEY,
THOMAS C. HALPERIN,
DANIEL MEYER,
KEVIN O'SHEA,
and MICHAEL L. WALSDORF,
as the ELECTRICAL INSURANCE
TRUSTEES,

     Plaintiffs,

  v.

GALAXY ENTERPRISES, INC.,

     Defendant.

No.

FILED: APRIL 10, 2008
08CV2035                AEE
JUDGE PALLMEYER
MAGISTRATE JUDGE VALDEZ

## COMPLAINT

The plaintiffs, WILLIAM T. DIVANE, JR., KENNETH J. BAUWENS, MICHAEL J. CADDIGAN, LARRY CRAWLEY, SAMUEL EVANS, TIM FOLEY, THOMAS C. HALPERIN, DANIEL MEYER, KEVIN O'SHEA, and MICHAEL R. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES (the "Trustees"), by their attorney, David R. Shannon, for their complaint against the defendant, GALAXY ENTERPRISES, INC. ("Galaxy"), state:

1.  This action arises under the Labor-Management Relations Act, as amended (29 U.S.C. § 141 et seq.), and the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.).  Jurisdiction is founded on the existence of questions arising thereunder.

2.    Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. § 1132(e)(2) by virtue of the fact that the Trustees' administrative offices are located in Chicago, Illinois.

3.    The plaintiffs are the duly appointed and acting trustees under an agreement originally entered into on June 24, 1930, between the Electrical Contractors' Association of City of Chicago ("ECA") and Local 134, International Brotherhood of Electrical Workers, and are known as the Electrical Insurance Trustees.

4.    Galaxy is an electrical contractor which signed a Letter of Assent effective June 13, 1997, and thereby agreed to the terms of a collective-bargaining agreement entered into between the ECA and Local 134, "The Principal Agreement by and between the Electrical Contractors' Association of City of Chicago and Local Union No. 134 International Brotherhood of Electrical Workers" (the "Principal Agreement").  A copy of the Letter of Assent is attached hereto as Exhibit A.

5.    Galaxy signed a separate Letter of Assent effective July 23, 1997, and thereby agreed to the terms of a collective-bargaining agreement entered into between the ECA and Local 134 called the "Residential Agreement."  A copy of the Letter of Assent is attached hereto as Exhibit B.

6.    Under the Principal Agreement, Galaxy agreed to pay certain wage rates and, in addition, to file a monthly report with and make a monthly contribution to the Trustees to cover

certain fringe benefits.  Excerpts of the Principal Agreement,
including Article XVIII (Wages and Fringe Benefits) and Article
XXI (Wage and Fringe Benefit Checks - Delinquency Collection
Policy), are attached hereto as Exhibit C.  The Delinquency
Collection Policy describes the payroll audit procedure and the
Trustees' remedies for delinquent contributions, and it provides
for liquidated damages, interest, and attorneys' fees.

7.    The Residential Agreement includes provisions which are
virtually identical to those referenced in paragraph 6 above;
excerpts of the Residential Agreement, including Article VII
(Fringe Benefits) and Article XI (Wage and Fringe Benefit Checks
- Delinquency Collection Policy), are attached hereto as
Exhibit D.

8.    Section (g)(1) of Article First of the insurance trust
agreement ("Insurance Agreement") pursuant to which the
plaintiffs are appointed trustees and which describes the duties
and responsibilities of the Trustees provides as follows:

> The Trustees shall have plenary power to make, from
> time to time, and to enforce such rules and regulations
> for the determination of eligibility for benefits, for
> the proper collection and handling of said Fund, for
> the allocation of benefits to those eligible for it,
> for the determination of who may be beneficiaries and
> the terms and conditions under which benefits shall be
> given to the beneficiaries and forfeited by them, and
> for the determination of methods of procedure and every
> other question (irrespective of its nature) arising in
> the collection and administration of said Fund, and
> generally in the carrying out of this Agreement, and in
> fully and completely accomplishing its purpose.

9.    Section (g)(2) of Article First Insurance Agreement
provides as follows:

-3-

"Each employer shall make continuing, prompt and proper
payments to the Trust Fund in such amounts as shall have
been agreed upon in writing from time to time, together with
such amounts as may be provided for as liquidated damages
with respect to delinquent accounts."

10.   Section (g)(3) of Article First of the Insurance

Agreement provides in part as follows:

"The Trustees, in their fiduciary capacities, shall
have the power to demand and collect the contributions
of the Employers to the Fund* * *. In addition to any
other remedies to which the parties may be entitled, an
Employer shall be obligated to pay interest at the rate
of 6% per annum on the moneys due to the Trustees from
the date when the payment was due to the date when
payment is made, together with all expenses of
collection incurred by the Trustees."

11.   Section (g)(5) Article First of the Insurance Agreement

provides in part as follows:

"Each Employer shall promptly furnish to the Trustees,
on demand, the names of its employees, their Social
Security numbers, the hours worked by each employee and
such other information as the Trustees may reasonably
require in connection with the administration of the
Trust.  The Trustees may, by their representatives,
examine the pertinent records of each Employer at the
Employer's place of business whenever such examination
is deemed necessary or advisable by the Trustees in
connection with the proper administration of the
Trust."

12.   Section (o) of Article First of the Insurance Agreement

provides:

"To the fullest extent permitted by federal law, the
Trustees shall have the discretionary authority to determine
all questions arising in connection with the Trust Fund ...
or as to the construction of the language or meaning of ...
this instrument or as to any writing in connection with the
operation of the Trust Fund or otherwise and the decision of
a majority of the Board of Trustees, if made in good faith,
shall be binding upon all persons dealing with the Trust
Fund or claiming any benefits thereunder...."

13.  Pursuant to the provisions of the Principal Agreement, the Residential Agreement, and the Insurance Agreement, in September 2007, the Trustees conducted an audit of Galaxy's books and records which covered the period from January 1, 2005 through December 31, 2006.  The audit revealed that Galaxy underpaid contributions due the Trustees under the Residential Agreement in the amount of $13,631.01.  A summary of the audit is attached hereto as Exhibit E.

WHEREFORE, the plaintiffs, WILLIAM T. DIVANE, JR., KENNETH J. BAUWENS, MICHAEL J. CADDIGAN, LARRY CRAWLEY, SAMUEL EVANS, TIM FOLEY, THOMAS C. HALPERIN, DANIEL MEYER, KEVIN O'SHEA, and MICHAEL R. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES, request the court to enter a judgment against GALAXY ENTERPRISES, INC. in the amount of $13,631.01 and add to the judgment liquidated damages, interest, attorneys' fees and court costs. The Trustees also request the Court to grant such other legal or equitable relief as the Court deems appropriate.

WILLIAM T. DIVANE JR., _et al_., as the
ELECTRICAL INSURANCE TRUSTEES

By: /s/ David R. Shannon
    _____
    One of Their Attorneys

David R. Shannon
Tenney & Bentley, LLC
111 West Washington Street
Suite 1900
Chicago, Illinois 60602
(312) 407-7800

-5-

# LETTER OF ASSENT – A

In signing this letter of assent, the undersigned firm does hereby authorize [1] **Electrical Contractors' Association**

**of City of Chicago, Inc., NECA** as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved [2] **Inside** labor agreement between the [1] **Electrical Contrs. Assoc., NECA, City of Chicago** and Local Union [3] **134** IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] **13** day of **June 1997**. It shall remain in effect until terminated by the undersigned employer giving written notice to the [1] **Electrical Contrs. Assoc., NECA, City of Chicago** and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

**SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW**

**Galaxy Enterprises, Inc.**
[5] Name of Firm

**46 E. Irving Park Rd.**
Street Address/P.O. Box Number

**Roselle, IL 60172**
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.: **36- 3743884**

SIGNED FOR THE EMPLOYER

BY [7] _(original signature)_

NAME [8] **Frank Maida**

TITLE/DATE **President**

SIGNED FOR THE UNION [5] **134** IBEW

BY [7] _(original signature)_

NAME [8] **Michael Fitzgerald**

TITLE/DATE **Business Manager**

**APPROVED**
INTERNATIONAL OFFICE - I.B.E.W.
**JUN 18 1997**
J. J. Barry, President
This approval does not make the International a party to this agreement

---

**INSTRUCTIONS (All items must be completed in order for assent to be processed)**

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF **FIVE** COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER. IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

## LETTER OF ASSENT – A

In signing this letter of assent, the undersigned firm does hereby authorize [1] ELECTRICAL CONTRS. ASSOC. OF

**CITY OF CHICAGO, NECA** as its collective bargaining representative for all matters contained in or pertaining to the

current and any subsequent approved [2] **RESIDENTIAL** labor agreement between the

[1] **ELECTRICAL CONTRS. ASSOC. OF CITY OF CHICAGO, NECA** and Local Union [3] **134** IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] **23** day of

**July** , **1997** . It shall remain in effect until terminated by the undersigned employer giving written notice to the

[1] **ELECTRICAL CONTRS. ASSOC OF CITY OF CHICAGO, NECA** and to the Local Union at least one hundred

fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

### SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

[5] **GALAXY ENTERPRISES, INC.**
Name of Firm

**46 E. IRVING PARK RD.**
Street Address/P.O. Box Number

**ROSELLE, IL 60172**
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.: **36-3743884**

SIGNED FOR THE EMPLOYER                    SIGNED FOR THE UNION [3] **134** IBEW

BY [7] _(signature)_ **Pres.**                    BY [7] _(signature)_

NAME [8] **Frank Maida** _(original signature)_      NAME [8] **Michael Fitzgerald** _(original signature)_

TITLE/DATE **President**                    TITLE/DATE **Business Manager**

#### INSTRUCTIONS (All items **must** be completed in order for assent to be processed)

[1] **NAME OF CHAPTER OR ASSOCIATION**
Insert full name of NECA Chapter or Contractors Association involved.

[2] **TYPE OF AGREEMENT**
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] **LOCAL UNION**
Insert Local Union Number.

[4] **EFFECTIVE DATE**
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] **EMPLOYER'S NAME & ADDRESS**
Print or type Company name & address.

[6] **FEDERAL EMPLOYER IDENTIFICATION NO.**
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] **SIGNATURES**
[8] **SIGNER'S NAME**
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced of a Company representative as well as a Local Union officer.

A MINIMUM OF **FIVE** COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER. **IMPORTANT:** These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

## Principal Agreement

### ARTICLE XVIII
### Wages and Fringe Benefits

**Section 18.01**  Effective June 6, 2005 through June 4, 2006 the rate of wages for Journeymen Wiremen shall be $33.15 per hour.

Effective June 5, 2006 through June 3, 2007 the total Wage and Fringe Benefit Package will be increased by $2.40 per hour. This increase shall be allocated by the Electrical Joint Arbitration Board.

Effective June 4, 2007 through June 1, 2008 the total Wage and Fringe Benefit Package will be increased by $2.65 per hour. This increase shall be allocated by the Electrical Joint Arbitration Board.

Effective June 2, 2008 through May 31, 2009 the total Wage and Fringe Benefit Package will be increased by $2.80 per hour. This increase shall be allocated by the Electrical Joint Arbitration Board.

**Section 18.02**  The rate of wages for General Foremen shall be $5.20 more per hour than the regular Journeymen Wiremen rate of pay.

**Section 18.03**  The rate of wages for Foremen shall be $2.60 more per hour than the regular Journeymen Wiremen rate of pay.

**Section 18.04**  The rate of wages for Apprentices shall be in percentages of the Journeymen Wireman Rate. All percentage increases for apprentices are based upon the On the Job Training (OJT) hours accrued for successful completion of related instruction. The following rate of wages for the OJT requirement of the apprentice program will prevail:

| Period | Elapsed Time | OJT Hours | Wages | Related Training |
| --- | --- | --- | --- | --- |
| 1st | N/A | 1000 | 40% | Satisfactory Progress |
| 2nd | N/A | 1000 | 45% | 1st yr. school completed |
| 3rd | 6 months | 750 | 50% | Satisfactory Progress |
| 4th | 6 months | 750 | 55% | 2nd yr. school completed |
| 5th | 6 months | 750 | 60% | Satisfactory Progress |
| 6th | 6 months | 750 | 65% | 3rd yr. school completed |
| 7th | 6 months | 750 | 70% | Satisfactory Progress |
| 8th | 6 months | 750 | 75% | 4th yr. school completed |
| 9th | 6 months | 750 | 80% | Satisfactory Progress |
| 10th | 6 months | 750 | 90% | 5th yr. school completed |

NOTE:  Apprentices in the first six (6) months and last six (6) months of their last year of apprenticeship will attend night seminars. This is a compulsory requirement.

Thereafter, upon successful completion of the On the Job Training and related instruction, the Journeyman Wireman rate shall apply.

## Principal Agreement

**Section 18.05**  The Employee has the option to designate a dollar amount to be deducted from the Employee's gross earnings and remitted weekly to the Chicagoland Electrical Industry Credit Union by the Employer.

**Section 18.06**  Effective June 6, 2005 through June 4, 2006 the Employer shall contribute an amount equal to 7.752% of the Gross Productive Electrical Labor Payroll of Employees to cover the following: Fringe benefits: Health and Welfare, Local Pension, Apprenticeship and Training Contribution, the Labor Management Cooperation Committee of Chicago and the Electrical Industry Drug-Free Alliance. This percentage contribution made to the Electrical Insurance Trustees will be based upon the Journeymen scale for all classifications of labor excluding apprentices.

**Section 18.07**  The Employer shall contribute $2.15 per hour for each hour worked into the Annuity Plan.

**Section 18.08**  Effective June 6, 2005 through June 4, 2006, $2.20 per hour for each hour worked will be contributed into the Additional Security Benefit Plan (ASBP) for General Foremen, Foremen, Journeymen Wiremen and Apprentices. Apprentices will receive a percentage of the ASBP contribution in accord with the percentages in Article XVIII, Section 4 of this Agreement.

**Section 18.09**  Effective June 6, 2005, all Employers covered by this Agreement shall contribute $.06 per hour worked for each employee covered by this Labor Agreement to the Administrative Maintenance Fund. The moneys are for the purpose of administration of the collective bargaining Agreement, handling grievances and all other management duties and responsibilities in this Agreement. The Administrative Maintenance Fund contribution shall be submitted with all other fringe benefits covered in the Labor Agreement by the 15th of the month. The enforcement for delinquent payments to the Fund shall be the sole responsibility of the Fund and the Electrical Contractors' Association of City of Chicago and not the Local Union.

(a)  The Administrative Maintenance Fund will be solely administered by the Electrical Contractors' Association of City of Chicago and shall not be used in any manner detrimental to the Local Union or the IBEW.

**Section 18.10**  The Electrical Joint Arbitration Board recognizes that the dangers and costs which alcohol and other chemical abuses can create in the electrical contracting industry as it relates to safety and productivity are significant. The Board resolves to combat chemical abuse in any form through the Electrical Industry Drug-Free Alliance program. The Board also agrees that to be effective, programs to eliminate substance impairment should contain a strong rehabilitation component. The parties recognize the employer's right to adopt and implement a drug and alcohol policy subject to all applicable laws and regulations, procedural safeguards, scientific principles and legitimate interests of privacy and confidentiality. The Electrical Joint Arbitration Board reserves the right to change or modify any section of the drug testing policy and procedures. The Board also recognizes that funding for this program will be borne by the employers and that this funding has been established at $.01 per hour for all work covered by this agreement. When drug and alcohol testing is performed, all testing shall be conducted in accordance with the procedures outlined in the Electrical Industry Drug-Free Alliance policy.

## Principal Agreement

**Section 18.11**  The percentages to cover contributions may be adjusted periodically by the Electrical Insurance Trustees on the basis of experience subject to the approval of the Electrical Joint Arbitration Board.

**Section 18.12**  All contractors who sign this Agreement must employ one or more journeymen. No owner, partner or financial affiliate shall work with the tools at any time. This shall not be construed to prevent the above persons from loading materials from the warehouse to the truck, from a truck to the job or from the truck to the warehouse.

**Section 18.13**  Employees on payroll reports submitted to the Electrical Insurance Trustees must be employed by the Participating Employer and signatory to the Principal Agreement. Employers cannot contribute to the Trustees on behalf of leased Employees or Employees of a Professional Employer Organization.

**Section 18.14**  If an Employer employs an Employee who is related to one of the owners of the Employer as a child, parent, sibling, in-law or spouse of either such owner or the owner's spouse, the Employer shall make fringe benefit contributions on behalf of such Employee on a full-time basis of not less than 40 hours per week for 48 weeks per calendar year, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee actually worked fewer hours, in which case the Trustees may determine that additional contributions need not be paid on behalf of that relative beyond the hours they determined were actually worked.

The Electrical Insurance Trustees are also authorized to require such full-time contributions by the Employer on behalf of an Employee who exercises significant control over the management and/or operation of the Employer's business, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee does not exercise such control.

This Section 18.14 shall not be deemed to require additional contributions on behalf of a relative who, in the absence of such contributions, does not qualify for any welfare benefits under a plan of benefits maintained by the Trustees.

**Section 18.15**  "Gross Productive Electrical Labor Payroll" is defined to mean total wages paid for all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor agreement. Gross payroll includes all wages paid including overtime premium pay computed at the rate established for each classification of electrical labor. No portion of wages shall be excluded from Gross Productive Electrical Labor Payroll. This definition has been the basis for payment to the National Electrical Benefit Fund and its adoption in the local Agreement is intended to eliminate confusion, facilitate computation and effectuate savings for the Employer.

**Section 18.16**  The Payroll Report for Participating Employers and a single check payable to Electrical Insurance Trustees covering the Employer's contribution for fringe benefits and the deduction made from the wages of Employees shall be sent monthly to the address as stated in Article XXI, Section 21.01 (a) of this Agreement.

**Section 18.17**  The Electrical Insurance Trustees are authorized and empowered to make the required allocation of the amount received among the various trusts.

## Principal Agreement

**Section 18.18**  The Employer agrees that it shall not constitute a violation of this Agreement for the Union to remove the workmen employed by an Employer who is delinquent in wage and fringe payments due under the terms of this Agreement. In the event the Employer desires to rehire the Employees removed for this reason, he must pay each Employee for all lost time due to this delinquency.

Any Employer who is part to this Agreement who is found to be delinquent in his payments with reference to wages, check off of authorized credit union deduction, contributions required by the Agreement to be made to the Electrical Insurance Trustees and to N.E.B.F., shall be subject to immediate cancellation of the Agreement, after the Employer has been sent one (1) warning notice in writing. Such cancellation shall not be determined as a strike, walkout or stoppage of work and is subject to approval of the International President of the I.B.E.W.

**Section 18.19**  Individual Employers who are delinquent in the payment of wages and/or fringe benefits due Employees shall be subject to having this Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union provided that the individual Employer fails to show satisfactory proof that the required payments have been paid.

**Section 18.20**  The failure of an individual Employer to comply with the above provisions shall constitute a breach of this Agreement.

## ARTICLE XIX
### National Electrical Benefit Fund

**Section 19.01**  It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the Employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

**Section 19.02**  An individual Employer who fails to remit as provided above shall be additionally subject to having this Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the Individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

## Principal Agreement

**Section 19.03**    The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this labor Agreement.

### ARTICLE XX
### Industry Fund

**Section 20.01**    Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than 2 of 1% of the productive electrical payroll, as determined by each Local Chapter and approved by the Trustees, with the following exclusions:

1. Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year, but not exceeding 150,000 man-hours.

2. One Hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages (including overtime) paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

### ARTICLE XXI
### Wage and Fringe Benefit Checks - Delinquency Collection Policy

**Section 21.01**    Employers who fail to have sufficient funds in the bank to cover checks issued to Employees for wages and checks issued to the Electrical Insurance Trustees for contributions will be penalized by the Electrical Joint Arbitration Board.

(a)    Due Date.  An Employer's contribution and payroll report are due on the fifteenth day of the month ("Due Date") following the month in which work was performed. Payroll reports and contributions must be sent to one of the following addresses:

**Via United States Postal Service:**

Electrical Insurance Trustees
75 Remittance Drive, Suite 1615
Chicago, IL 60675-1615

**Via Courier (everything except U.S.P.S.):**

The Northern Trust Company
350 North Orleans Street
Receipt & Dispatch
8th Floor
Chicago, IL 60654

Attention: Electrical Insurance Trustees
Suite 1615

## Principal Agreement

(b)    Delinquent Defined.  If a contribution and payroll report are not received by the Due Date, they are delinquent. If the Due Date is a Saturday, Sunday or holiday, the contribution and payroll report must be received by the next business day. Contributions are not received until they are received at one of the above addresses. The postmark date on an envelope is not the receipt date. If only a part of the amount due is paid, the shortage is delinquent.

(c)    Additional Charge for Delinquency.  Failure to pay the contribution by the Due Date will result in liquidated damages of one percent (1%), multiplied by the total amount due for each day late, up to ten percent (10%).

(d)    Past Due Date and Amount.  If an Employer's delinquent payment is not received by the last day of the month ("Past Due Date") following the month in which work was performed, the Trustees will assess additional liquidated damages and interest as follows:

(1)    Liquidated damages at the rate described in item (c) above, plus an additional five percent (5%) of the delinquent amount.  If the delinquent payment is not received by the last day of the month following the Past Due Date, another five percent (5%) in liquidated damages will be assessed.

(2)    Interest at the rate of one percent (1%) will be assessed for each month, or a part thereof, that a payment is late.

As soon as reasonably possible following the Past Due Date, the Trust office will notify the delinquent Employer that failure to pay the amount due will result in liability for additional liquidated damages, interest, attorneys' fees and costs, and jeopardizes coverage and eligibility for its Employees.

(e)    Claim on Bond and notice to EJAB.  If an Employer is delinquent in the amount of $25,000 or more, the Trust office will promptly file a claim on the Employer's Fringe Benefit Bond and send a notice to the Electrical Joint Arbitration Board. If an Employer's delinquent payment is not received by the last day of the month following the Past Due Date, regardless of the amount of the delinquency, the Trust office will send a notice to the Employer's surety and to the Electrical Joint Arbitration Board.

(f)    Payment Required and Suspension of Coverage

(i)    Hours for which an Employer is delinquent do not count in determining eligibility under the Insurance Trust.

(2)    If an Employer remains delinquent fifteen (15) days after the Past Due Date, the Trust office will promptly send a notice to (a) the Employer for distribution to Employees, (b) affected Employees at their last address in the Insurance Trust records and (c) Local Union No. 134, which explains that coverage under the Insurance Trust will be suspended if the delinquent contributions are not paid by the last day of the month following the Past Due Date. If the Trust office has no address for an Employee, the notice to the Union and his Employer will substitute for notice to the Employee. The Employer must post the notice at the location for other Employee notices. Failure to pay the delinquent amount in full by the last day of the month following the Past Due Date will result in a suspension of coverage and

## Principal Agreement

eligibility under the Insurance Trust for claims incurred after the last day of the month following the Past Due Date, and the suspension will continue until eligibility and coverage are reinstated by the Trustees.

(f) It is the intent of the Parties that an Employee should not continue to work for an Employer who is delinquent in making contributions to the Electrical Insurance Trustees and that while an Employer remains employed by a delinquent Employer, to the extent permitted by law, the Employee will not receive health and welfare benefits. If they deem it prudent, the Trustees may defer suspension of coverage and eligibility as otherwise required by this Agreement while pursuing other means of curing the delinquency, including in the case of a bankrupt Employer an application to the bankruptcy court for any relief to which the Trustees may be entitled.

(4) Suspension of coverage does not relieve the Employer of its obligation to pay contributions.

(g) Referral to Legal Counsel. The Fund Administrator will refer any delinquency which remains unpaid 90 days after the Due Date and which is more than $5,000 to Fund Counsel for legal action. Notice of the referral will be provided to the Chicago and Cook County Chapter, N.E.C.A., the Local 134 Business Manager and affected Employees. If Fund Counsel files suit to collect the delinquency, the Employer is liable for the amount of the contributions, liquidated damages, interest, and all costs of recovery, including but not limited to attorney's fees and court costs.

(h) Deposit. If an Employer fails to make the full monthly contribution by the Due Date three (3) times in any twelve (12) month period, the Trustees will require the Employer to post a cash deposit which is the lesser of (a) three (3) months of estimated contributions, based on the Employer's last twelve (12) payroll reports, or (b) the amount on the following schedule:

| Number of Employees | Deposit Required |
| --- | --- |
| 1 - 5 | $10,000 |
| 6 - 10 | $20,000 |
| 11 - 20 | $40,000 |
| 21 - 50 | $100,000 |
| 51 - 75 | $150,000 |
| Over 75 | $150,000 |

plus an additional amount determined by this schedule for increments of Employees beyond Seventy-five (75).

The term of the deposit is for a period of one (1) year.

Page 30

## Principal Agreement

The deposit will only be used to guarantee contributions and related liquidated damages, interest and costs of collection, and shall be in addition to other security hereunder.

The term of the deposit will automatically renew if the Employer is again delinquent during the year the deposit is required to be maintained.

(i) The following will also be processed as delinquencies:

(1) Liquidated Damages. Assessments for liquidated damages must be paid by the last day of the month in which assessed. If assessed liquidated damages are not paid by the last day of the month in which assessed, they will be treated the same as delinquent contributions except that liquidated damages will not be assessed for the late payment of liquidated damages.

(2) If a check for contributions is dishonored for any reason, the contributions will be treated as unpaid. In addition to their remedies hereunder, the Trustees may pursue any other remedies they may have against the Employer or any other person under any applicable law.

(3) Any amounts assessed by the Trust office pursuant to any rule adopted by the Trustees, including but not limited to any assessment for failure to permit a payroll audit, will be treated the same as delinquent contributions, and must be paid by the end of the month in which assessed.

(j) Controversies and Disputes. In any controversy, claim, demand, suit at law or other proceeding between an Employer or any other person and the Trustees, the Trustees are entitled to rely upon any facts appearing in the records of the Trustees, certified by the Union or an employee, any facts which are of public record, and any evidence pertinent to the issue involved.

The Trustees have discretionary authority to determine all questions and controversies relating to the Trust, including the construction of any rules or regulations adopted by the Trustees. The decision of the Trustees is binding upon all persons dealing with the Trustees. If a determination of the Trustees is subject to review by a court or other authorized person or body, the decision by the Trustees must be sustained unless it is determined that the Trustees acted in an arbitrary and capricious manner.

(k) Payroll Audit. The Trustees are authorized to conduct payroll audits of Employers from time to time as the Trustees deem desirable. If an Employer fails to schedule an audit for a date within 30 days of the Trustees' notice of audit or if an Employer refuses to schedule an audit, the Trustees shall immediately assess the Employer $1,000. The Trustees shall assess the Employer an additional $2,000 if the audit is not scheduled by the end of the following month. Thereafter, the Trustees shall assess the Employer $3,000 per month until the Employer complies. If an audit discloses an underpayment, liquidated damages of fifteen percent (15%), multiplied by the amount of the underpayment, will be assessed. If the underpayment and liquidated damages are not paid by the last day of the month following at least fifteen (15) days notice by the Trust office, the same rules above that apply to delinquent contributions will apply except that the total liquidated damages will not exceed twenty percent (20%) of the underpayment. If the audit discloses an underpayment of three

Page 31

Principal Agreement

percent (3%) or more of the total contributions due for the audit period, the cost of the audit (deemed to be $750) will be paid by the Employer. If Fund Counsel files suit to collect an underpayment or to enforce the Trustees' right to conduct an audit, the Employer will be liable for any attorneys' fees and costs incurred by the Trustees in addition to any underpayment, liquidated damages and interest.

**Section 21.02**   The failure of an Employer to comply with the above provisions is a breach of this Agreement.

### ARTICLE XXII
### Workmanship

**Section 22.01**   All electrical work put in or constructed by Employees shall be done in accordance with the ordinance of the City of Chicago or the rules of the Electrical Inspection Department governing same. All Employees shall be held responsible for having their work done in accordance with the above mentioned rules and in a workmanlike manner.

**Section 22.02**   Journeymen Wiremen shall be required to make corrections on improper workmanship due to failure to inspect and test or due to negligence or incompetence on their own time and during regular working hours unless errors were made by order of the Employer or the Employer's representative.

**Section 22.03**   On each job requiring five (5) or more Employees, there shall be a foreman. His duties shall also include the following: to post the company label, to make a final inspection and have faulty work corrected.

### ARTICLE XXIII
### Union and Employer Responsibility

**Section 23.01**   All work shall be performed by Employees in the most efficient and practical manner either on the job or in the shop of the Employer. Prior to the performance of prefabrication work in the shop, performed by Employees covered by this Agreement, there shall be notification to the job steward on the job for which the materials are intended for installation.

**Section 23.02**   The function of the Employer shall be to see that adequate tools and equipment for the preparation and installation of materials are available, also that competent engineering and supervision, plans and specifications, material, apparatus and appliances are provided in such form and quantity as will expedite performance of the work coming under the provisions of this Agreement.

**Section 23.03**   It is the essence of this Agreement that Employers and Employees represented respectively by the Union shall undertake to place all installations undertaken and performed respectively by them in a workmanlike manner, in satisfactory operation for the purchaser and for the least possible resultant cost.

Page 32



Principal Agreement

### ARTICLE XXIV
### I.B.E.W. Affiliation

**Section 24.01**   The Local Union is a part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved agreement of this or any other Local Union of the I.B.E.W., other than violations of Section 2 of this Article, will be sufficient cause for cancellation of this Agreement by the Local Union, after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

**Section 24.02**   The subletting, assigning or transferring by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the I.B.E.W. or one of its local unions as the collective bargaining representative of his Employees or any electrical work in the jurisdiction of this or any local union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

**Section 24.03**   All charges of violations of Section 2 of this Article shall be considered a dispute and shall be processed in accordance with provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

### ARTICLE XXV
### Separability Clause

**Section 25.01**   Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall thereupon seek to negotiate substitute provisions which are in conformity with the applicable laws.

### ARTICLE XXVI
### Union Security

**Section 26.01**   Each Employer in response to the Union's claim that it represents an uncoerced majority of each Employer and Employees acknowledges and agrees that there is no good faith doubt that the Union has been authorized to, and in fact does, represent such majority of Employees. Therefore, the Union is hereby recognized as the sole and exclusive bargaining representative of the Employees now and hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment.

**Section 26.02**   All Employees covered by the terms of this Agreement shall be required to become and remain members of the Union as a condition of employment, from and after the eighth (8th) day following the date of their employment or the effective date of this Agreement, whichever is later.

**Section 26.03**   Employers agree to use their best efforts to promote products carrying the union label.

Page 33

## Residential Agreement

representing the Employer and three members representing the Union. The duties of this Committee shall be to develop and recommend safe work rules that are equal to or greater than the Standards of Construction as established by the Occupational Safety and Health Act of 1970, or other applicable Federal or State laws. Such rules, and the other safety rules provided in this Article, are minimum rules and not intended to imply that the Union objects to the establishment and imposition by the Employers of additional or more stringent safety rules to protect the health and safety of the Employees.

**Section 7.02**   It shall also be the function of this Committee to study these safe work rules and recommend their update to the parties to this Agreement for possible inclusion in this Agreement. This Committee shall meet at least once each quarter and also when called by the Chairman or when called by a majority of the current committee members.

**Section 7.03**   Members of the Joint Safety Committee shall be selected by the party they represent. Their term of office shall be three years unless removed by the party they represent. The term of one Employer and one Union representative shall expire each year with successors to be determined in the same manner as the original appointments were made. A Committee member is eligible to succeed himself.

**Section 7.04**   As a safety measure to life, two or more Residential Wiremen must be employed on energized conductors or equipment charged with 250 Volts or more. Journeymen shall be used in assisting a Residential Wireman while splicing cable. Cable Splicers shall not be used in assisting a Journeyman while Splicing cable. Cable Splicers shall not be required to work on wires or cables when the difference in potentials is over 200 Volts between any two (2) conductors or between any conductor or ground unless assisted by (1) Journeyman. In no case shall Cable Splicers be required to work on energized cables carrying in excess of 480 Volts.

### ARTICLE VIII
### Fringe Benefits

**Section 8.01**   Effective June 6, 2005 through June 4, 2006, the Employer shall contribute an amount equal to 36.6144% of the Gross Productive Electrical Labor Payroll of Employees to cover the following fringe benefits: Health and Welfare, Local Pension, Apprenticeship and Training Contribution, and the Labor Management Cooperation Committee of Chicago. This percentage contribution made to the Electrical Insurance Trustees will be based upon the Residential Wireman scale for all classifications of labor excluding Apprentices.

**Section 8.02**   The Employer shall contribute $2.15 per hour for each hour worked into the Annuity Plan.

**Section 8.03**   Effective June 6, 2005, $2.20 per hour for each hour worked will be contributed into the Additional Security Benefit Plan (ASBP) for General Foremen, Foremen, Journeyman Wiremen and Apprentices. Apprentices will receive a percentage of the ASBP contribution in accord with the percentages in Article V, Section 9 of this Agreement.

**Section 8.04**   The Electrical Joint Arbitration Board recognizes that the dangers and costs which alcohol and other chemical abuses can create in the electrical contracting

Page 14

## Residential Agreement

industry as it relates to safety and productivity are significant. The Board resolves to combat chemical abuse in any form through the Electrical Industry Drug-Free Alliance program. The Board also agrees that to be effective, programs to eliminate substance impairment should contain a strong rehabilitation component. The parties recognize the employer's right to adopt and implement a drug and alcohol policy subject to all applicable laws and regulations, procedural safeguards, scientific principles and legitimate interests of privacy and confidentiality. The Electrical Joint Arbitration Board reserves the right to change or modify any section of the drug testing policy and procedures. The Board also recognizes that funding for this program will be borne by the employers and that this funding has been established at $.01 per hour for all work covered by this agreement. When drug and alcohol testing is performed, all testing shall be conducted in accordance with the procedures outlined in the Electrical Industry Drug-Free Alliance policy.

**Section 8.05**   Effective June 6, 2005, all Employers covered by this Agreement shall contribute $.06 per hour worked for each employee covered by this Labor Agreement to the Administrative Maintenance Fund. The moneys are for the purpose of administration of the collective bargaining Agreement, handling grievances and all other management duties and responsibilities in this Agreement. The Administrative Maintenance Fund contribution shall be submitted with all other fringe benefits covered in the Labor Agreement by the 15th of the month. The enforcement for delinquent payments to the Fund shall be the sole responsibility of the Fund and the Electrical Contractors' Association of City of Chicago and not the Local Union.

(a)   The Administrative Maintenance Fund will be solely administered by the Electrical Contractors' Association of City of Chicago and shall not be used in any manner detrimental to the Local Union or the IBEW.

**Section 8.06**   The percentages to cover contributions may be adjusted periodically by the Electrical Insurance Trustees on the basis of experience subject to the approval of the Electrical Joint Arbitration Board.

**Section 8.07**   Employees on payroll reports submitted to the Electrical Insurance Trustees must be employed by the Participating Employer and signatory to the Residential Agreement. Employers cannot contribute to the Trustees on behalf of leased Employees or Employees of a Professional Employer Organization.

**Section 8.08**   All contractors who sign this Agreement must employ one or more journeymen. No owner, partner, or financial officer shall work with the tools at any time. This shall not be construed to prevent the above persons from loading materials from the warehouse to the truck, from a truck to the job or from the truck to the warehouse.

**Section 8.09**   If an Employer employs an Employee who is related to one of the owners of the Employer as a child, parent, sibling, in-law or spouse of either such owner or the owner's spouse, the Employer shall make fringe benefit contributions on behalf of such Employee on a full-time basis of not less than 40 hours per week for 48 weeks per calendar year, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee actually worked fewer hours, in which case the Trustees may determine that additional contributions need not be paid on behalf of that relative beyond the hours they determined were actually worked.

Page 15

**Residential Agreement**

The Electrical Insurance Trustees are also authorized to require such full-time contributions by the Employer on behalf of an Employee who exercises significant control over the management and/or operation of the Employer's business, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee does not exercise such control.

This Section 8.09 shall not be deemed to require additional contributions on behalf of a relative who, in the absence of such contributions, does not qualify for any welfare benefits under a plan of benefits maintained by the Trustees.

**Section 8.10** "Gross Productive Electrical Labor Payroll" is defined to mean total wages paid for all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor agreement. Gross payroll includes all wages paid including overtime premium pay computed at the rate established for each classification of electrical labor. No portion of wages shall be excluded from Gross Productive Electrical Labor Payroll. This definition has been the basis for payment to the National Electrical Benefit Fund and its adoption in the local Agreement is intended to eliminate confusion, facilitate computation and effectuate savings for the Employer.

**Section 8.11** The Payroll Report for Participating Employers and a single check payable to Electrical Insurance Trustees covering the Employer's contribution for fringe benefits and the deduction made from the wages of Employees shall be sent monthly to the address as stated in Article XI, Section 11.01 (a) of this Agreement.

**Section 8.12** The Electrical Insurance Trustees are authorized and empowered to make the required allocation of the amount received among the various trusts.

**Section 8.13** The Employer agrees that it shall not constitute a violation of this Agreement for the Union to remove the workmen employed by an Employer who is delinquent in wage and fringe payments due under the terms of this Agreement. In the event the Employer desires to rehire the Employees removed for this reason, he must pay each Employee for all lost time due to this delinquency.

Any Employer who is party to this Agreement who is found to be delinquent in his payments with reference to wages, check off of authorized credit union deduction, contributions required by the Agreement to be made to the Electrical Insurance Trustees and to N.E.B.F., shall be subject to immediate cancellation of the Agreement, after the Employer has been sent one (1) warning notice in writing. Such cancellation shall not be determined as a strike, walkout or stoppage of work and is subject to approval of the International President of the I.B.E.W.

**Section 8.14** Individual Employers who are delinquent in the payment of wages and/or fringe benefits due Employees shall be subject to having this Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union provided that the individual Employer fails to show satisfactory proof that the required payments have been paid.

**Residential Agreement**

**Section 8.15** The failure of an individual Employer to comply with the above provisions shall constitute a breach of this Agreement.

### ARTICLE IX
### National Electrical Benefit Fund

**Section 9.01** It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the Employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF for its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

**Section 9.02** An individual Employer who fails to remit as provided above shall be additionally subject to having this Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

**Section 9.03** The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of his labor Agreement.

### ARTICLE X
### Industry Fund

**Section 10.01** Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than 2 of 1% of the productive electrical payroll, as determined by each local Chapter and approved by the Trustees, with the following exclusions:

(a) Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year, but not exceeding 150,000 man-hours.

(b) One hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

Residential Agreement

(Productive electrical payroll is defined as the total wages (including overtime) paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

## ARTICLE XI
## Wage and Fringe Benefit Checks - Delinquency Collection Policy

**Section 11.01** Employers who fail to have sufficient funds in the bank to cover checks issued to Employees for wages and checks issued to the Electrical Insurance Trustees for contributions will be penalized by the Electrical Joint Arbitration Board.

(a) Due Date. An Employer's contribution and payroll report are due on the fifteenth day of the month ("Due Date") following the month in which work was performed. Payroll reports and contributions must be sent to one of the following addresses:

**Via United States Postal Service:**

Electrical Insurance Trustees
75 Remittance Drive, Suite 1615
Chicago, IL 60675-1615

**Via Courier (everything except U.S.P.S.):**

The Northern Trust Company
350 North Orleans Street
Receipt & Dispatch
8th Floor
Chicago, IL 60654
Attention: Electrical Insurance Trustees
Suite 1615

(b) Delinquent Defined. If a contribution and payroll report are not received by the Due Date, they are delinquent. If the Due Date is a Saturday, Sunday or holiday, the contribution and payroll report must be received by the next business day. Contributions are not received until they are received at one of the above addresses. The postmark date on an envelope is not the receipt date. If only a part of the amount due is paid, the shortage is delinquent.

(c) Additional Charge for Delinquency. Failure to pay the contribution by the Due Date will result in liquidated damages of one percent (1%), multiplied by the total amount due for each day late, up to ten percent (10%).

(d) Past Due Date and Amount. If an Employer's delinquent payment is not received by the last day of the month ("Past Due Date") following the month in which work was performed, the Trustees will assess additional liquidated damages and interest as follows:

(1) Liquidated damages at the rate described in item (c) above, plus an additional five percent (5%) of the delinquent amount. If the delinquent payment is not received by the last day of the month following the Past Due Date, another five percent (5%) in liquidated damages will be assessed.

Page 18

---

Residential Agreement

(2) Interest at the rate of one percent (1%) will be assessed for each month, or a part thereof, that a payment is late.

As soon as reasonably possible following the Past Due Date, the Trust office will notify the delinquent Employer that failure to pay the amount due will result in liability for additional liquidated damages, interest, attorneys' fees and costs, and jeopardizes coverage and eligibility for its Employees.

(e) Claim on Bond and notice to EJAB. If an Employer is delinquent in the amount of $25,000 or more, the Trust office will promptly file a claim on the Employer's Fringe Benefit Bond and send a notice to the Electrical Joint Arbitration Board. If an Employer's delinquent payment is not received by the last day of the month following the Past Due Date, regardless of the amount of the delinquency, the Trust office will send a notice to the Employer's surety and to the Electrical Joint Arbitration Board.

(f) Payment Required and Suspension of Coverage.

(1) Hours for which an Employer is delinquent do not count in determining eligibility under the Insurance Trust.

(2) If an Employer remains delinquent fifteen (15) days after the Past Due Date, the Trust office will promptly send a notice to (a) the Employer for distribution to Employees, (b) affected Employees at their last address in the Insurance Trust records and (c) Local Union No. 134, which explains that coverage under the Insurance Trust will be suspended if the delinquent contributions are not paid by the last day of the month following the Past Due Date. If the Trust office has no address for an Employee, the notice to the Union and his Employer will substitute for notice to the Employee. The Employer must post the notice at the location for other Employee notices. Failure to pay the delinquent amount in full by the last day of the month following the Past Due Date will result in a suspension of coverage and eligibility under the Insurance Trust for claims incurred after the last day of the month following the Past Due Date, and the suspension will continue until eligibility and coverage are reinstated by the Trustees.

(3) It is the intent of the Parties that an Employee should not continue to work for an Employer who is delinquent in making contributions to the Electrical Insurance Trustees and that while an Employee remains employed by a delinquent Employer, to the extent permitted by law, the Employee will not receive health and welfare benefits. If they deem it prudent, the Trustees may defer suspension of coverage and eligibility as otherwise required by this Agreement while pursuing other means of curing the delinquency, including in the case of a bankrupt Employer an application to the bankruptcy court for any relief to which the Trustees may be entitled.

(4) Suspension of coverage does not relieve the Employer of its obligation to pay contributions.

(g) Referral to Legal Counsel. The Fund Administrator will refer any delinquency which remains unpaid 90 days after the Due Date and which is more than $5,000 to Fund

Page 19

## Residential Agreement

Counsel for legal action. Notice of the referral will be provided to the Chicago and Cook County Chapter, N.E.C.A., the Local 134 Business Manager and affected Employees. If Fund Counsel files suit to collect the delinquency, the Employer is liable for the amount of the contributions, liquidated damages, interest, and all costs of recovery, including but not limited to attorneys' fees and court costs.

(b) Deposit. If an Employer fails to make the full monthly contribution by the Due Date three (3) times in any twelve (12) month period, the Trustees will require the Employer to post a cash deposit which is the lesser (a) of three (3) months of estimated contributions, based on the Employer's last twelve (12) payroll reports, or (b) the amount on the following schedule:

| Number of Employees | Deposit Required |
| --- | --- |
| 1 - 5 | $10,000 |
| 6 - 10 | $20,000 |
| 11 - 20 | $40,000 |
| 21 - 50 | $100,000 |
| 51 - 75 | $150,000 |
| Over 75 | $150,000 |

plus an additional amount determined by this schedule for increments of Employees beyond Seventy-five (75).

The term of the deposit is for a period of one (1) year.

The deposit will only be used to guarantee contributions and related liquidated damages, interest and costs of collection, and shall be in addition to other security hereunder.

The term of the deposit will automatically renew if the Employer is again delinquent during the year the deposit is required to be maintained.

(i) The following will also be processed as delinquencies:

(1) Liquidated Damages. Assessments for liquidated damages must be paid by the last day of the month in which assessed. If assessed liquidated damages are not paid by the last day of the month in which assessed, they will be treated the same as delinquent contributions except that liquidated damages will not be assessed for the late payment of liquidated damages.

(2) If a check for contributions is dishonored for any reason, the contributions will be treated as unpaid. In addition to their remedies hereunder, the Trustees may

## Residential Agreement

pursue any other remedies they may have against the Employer or any other person under any applicable law.

(3) Any amounts assessed by the Trust office pursuant to any rule adopted by the Trustees, including but not limited to any assessment for failure to permit a payroll audit, will be treated the same as delinquent contributions, and must be paid by the end of the month in which assessed.

(i) Controversies and Disputes. In any controversy, claim, demand, suit at law or other proceeding between an Employer or any other person and the Trustees, the Trustees are entitled to rely upon any facts appearing in the records of the Trustees, certified by the Union or an Employer, any facts which are of public record, and any other evidence pertinent to the issue involved.

The Trustees have discretionary authority to determine all questions and controversies relating to the Trust, including the construction of any rules or regulations adopted by the Trustees. The decision of the Trustees is binding upon all persons dealing with the Trustees. If a determination of the Trustees is subject to review by a court or other authorized person or body, the decision by the Trustees must be sustained unless it is determined that the Trustees acted in an arbitrary and capricious manner.

(k) Payroll Audit. The Trustees are authorized to conduct payroll audits of Employers from time to time as the Trustees deem desirable. If an Employer fails to schedule an audit for a date within 30 days of the Trustees' notice of audit or if an Employer refuses to schedule an audit, the Trustees shall immediately assess the Employer $1,000. The Trustees shall assess the Employer an additional $2,000 if the audit is not scheduled by the end of the following month. Thereafter, the Trustees shall assess the employer $3,000 per month until the Employer complies. If an audit discloses an underpayment, liquidated damages of fifteen percent (15%), multiplied by the amount of the underpayment, will be assessed. If the underpayment and liquidated damages are not paid by the last day of the month following at least fifteen (15) days notice by the Trust office, the same rules above that apply to delinquent contributions will apply except that the total liquidated damages will not exceed twenty percent (20%) of the underpayment. If the audit discloses an underpayment of three percent (3%) or more of the total contributions due for the audit period, the cost of the audit (deemed to be $750) will be paid by the Employer. If Fund Counsel files suit to collect an underpayment or to enforce the Trustees' right to conduct an audit, the Employer will be liable for any attorneys' fees and costs incurred by the Trustees in addition to any underpayment, liquidated damages and interest.

**Section 11.02.** The failure of an Employer to comply with the above provisions is a breach of this Agreement.

## ARTICLE XII
## Wage and Fringe Benefit Performance Bond

**Section 12.01.** The Employer shall furnish two bonds, each with corporate surety, one to guarantee the payment of wages with the Union as "obligee" and the other to guarantee the payment of fringe benefit contributions with the Electrical Insurance Trustees as "obligee." The wage bond shall be on a standard form provided by the Union (an example is

08CV2035              AEE
JUDGE PALLMEYER
MAGISTRATE JUDGE VALDEZ

To the EIT Benefit Funds Local 134

Our report on the examination of the payroll records of this employer are as follows:

| | |
|---|---|
| Employer: | GALAXY ENTERPRISES, INC. |
| Address: | 1002 BONAVENTURE DR |
| | ELK GROVE VILLAGE, IL 60007-0000 |
| Telephone: | (847) 923-1100 |
| Period Covered: | 1/1/2005 - 12/31/2005 |
| Contact: | DON DENTAMARO |
| Date of Examination: | September 18, 2007 |
| Field Auditor(s): | GRANT WORKMAN |

| | |
|---|---|
| Type of Organization: | C-CORP / FRANK MAIDA 50%, DON DENTAMARO 50% |
| Federal ID Number: | 36-3743884 |
| State ID Number: | T213070 |
| Synopsis: | The prescribed audit procedures were performed. |
| | "R" ELECTRICIAN |
| | Dominic Dentamaro, xxx-xx-3064, is the brother of a majority shareholder, therefore we assumed a minimum of 40 hours per week for 48 weeks and no hours for 4 weeks throughout 2005. |
| | See accompanying schedule for exceptions noted. |
| | "Participatory Employees" |
| | No exceptions were noted. |
| Exit Interview: | Reviewed exceptions with Mr.Dentamaro on January 14, 2008. |

EIT Benefit Funds Local 134
Payroll Audit of : GALAXY ENTERPRISES, INC.

The amounts due to (from) the various funds are as follows:

## R-Electricians

| | Hours | Wages | Rate | Amount Due (Overreported) |
|---|---|---|---|---|
| **Health and Welfare** | | | | |
| 01/01/05  To  06/05/05 | | $938.51 | 23.3766% | $219.39 |
| 06/06/05  To  12/31/05 | | $7,800.63 | 24.6942% | $1,926.30 |
| | | $8,739.14 | | $2,145.69 |
| | | | | |
| **Pension Plan #2** | | | | |
| 01/01/05  To  06/05/05 | | $938.51 | 9.3506% | $87.76 |
| 06/06/05  To  12/31/05 | | $7,800.63 | 10.3556% | $807.80 |
| | | $8,739.14 | | $895.56 |
| | | | | |
| **Apprentice & Training Fund** | | | | |
| 01/01/05  To  06/05/05 | | $938.51 | 1.0101% | $9.48 |
| 06/06/05  To  12/31/05 | | $7,800.63 | 0.9957% | $77.67 |
| | | $8,739.14 | | $87.15 |
| | | | | |
| **LMCC** | | | | |
| 01/01/05  To  06/05/05 | | $938.51 | 0.5483% | $5.15 |
| 06/06/05  To  12/31/05 | | $7,800.63 | 0.5405% | $42.16 |
| | | $8,739.14 | | $47.31 |
| | | | | |
| **Drug Free Alliance** | | | | |
| 01/01/05  To  06/05/05 | | $938.51 | 0.0577% | $0.54 |
| 06/06/05  To  12/31/05 | | $7,800.63 | 0.0284% | $2.22 |
| | | $8,739.14 | | $2.76 |
| | | | | |
| **Annuity Fund** | | | | |
| 01/01/05  To  06/05/05 | 40.00 | | $2.15 | $86.00 |
| 06/06/05  To  12/31/05 | 187.00 | | $2.15 | $402.05 |
| | 227.00 | | | $488.05 |
| | | | | |
| **Additional Security Benefit Fund - Journeyman** | | | | |
| 01/01/05  To  06/05/05 | 32.00 | | $1.70 | $54.40 |
| 06/06/05  To  12/31/05 | 187.00 | | $1.70 | $317.90 |
| | 219.00 | | | $372.30 |
| | | | | |
| **Additional Security Benefit Fund   - 80% Apprentice** | | | | |
| 01/01/05  To  06/05/05 | 8.00 | | $1.26 | $10.08 |
| 06/06/05  To  12/31/05 | -- | | $1.26 | $0.00 |
| | 8.00 | | | $10.08 |
| | | | | |
| **Sub-Fund** | | | | |
| 01/01/05  To  06/05/05 | 40.00 | | $0.50 | $20.00 |
| 06/06/05  To  12/31/05 | 187.00 | | $1.00 | $187.00 |
| | 227.00 | | | $207.00 |
| | | | | |
| **Administrative and Maintenance Fund** | | | | |
| 01/01/05  To  06/05/05 | 40.00 | | $0.06 | $2.40 |
| 06/06/05  To  12/31/05 | 187.00 | | $0.06 | $11.22 |
| | 227.00 | | | $13.62 |

Total amount due to (from) funds for R-Electricians                    $    4,269.52

To the EIT Benefit Funds Local 134

Our report on the examination of the payroll records of this employer are as follows:

| | |
|---|---|
| Employer: | GALAXY ENTERPRISES, INC. |
| Address: | 1002 BONAVENTURE DR<br>ELK GROVE VILLAGE, IL 60007-0000 |
| Telephone: | (847) 923-1100 |
| Period Covered: | 1/1/2006 - 12/31/2006 |
| Contact: | DON DENTAMARO |
| Date of Examination: | September 18, 2007 |
| Field Auditor(s): | GRANT WORKMAN |

| | |
|---|---|
| Type of Organization: | C-CORP / FRANK MAIDA 50%, DON DENTAMARO 50% |
| Federal ID Number: | 36-3743884 |
| State ID Number: | T213070 |
| Synopsis: | The prescribed audit procedures were performed. |
| | "R" ELECTRICIAN |
| | Dominic Dentamaro, xxx-xx-3064, is the brother of a majority shareholder, therefore we assumed a minimum of 40 hours per week for 48 weeks and no hours for 4 weeks throughout 2006. |
| | See accompanying schedule for exceptions noted. |
| | "Participatory Employees" |
| | No exceptions were noted. |
| Exit Interview: | Reviewed exceptions with Mr.Dentamaro on January 14, 2008. |

EIT Benefit Funds Local 134
Payroll Audit of : GALAXY ENTERPRISES, INC.

The amounts due to (from) the various funds are as follows:

## R-Electricians

|  | Hours | Wages | Rate | Amount Due (Overreported) |
|---|---|---|---|---|
| **Health and Welfare** | | | | |
| 01/01/06  To  06/05/06 | | $25,304.15 | 24.6942% | $6,248.66 |
| 06/06/06  To  12/31/06 | | ($13,541.13) | 26.2534% | ($3,555.01) |
| | | $11,763.02 | | $2,693.65 |
| **Pension Plan #2** | | | | |
| 01/01/06  To  06/05/06 | | $25,304.15 | 10.3556% | $2,620.40 |
| 06/06/06  To  12/31/06 | | ($13,541.13) | 11.0468% | ($1,495.86) |
| | | $11,763.02 | | $1,124.54 |
| **Apprentice & Training Fund** | | | | |
| 01/01/06  To  06/05/06 | | $25,304.15 | 0.9957% | $251.95 |
| 06/06/06  To  12/31/06 | | ($13,541.13) | 0.9642% | ($130.56) |
| | | $11,763.02 | | $121.39 |
| **LMCC** | | | | |
| 01/01/06  To  06/05/06 | | $25,304.15 | 0.5405% | $136.77 |
| 06/06/06  To  12/31/06 | | ($13,541.13) | 0.5234% | ($70.87) |
| | | $11,763.02 | | $65.90 |
| **Drug Free Alliance** | | | | |
| 01/01/06  To  06/05/06 | | $25,304.15 | 0.0284% | $7.19 |
| 06/06/06  To  12/31/06 | | ($13,541.13) | 0.0275% | ($3.72) |
| | | $11,763.02 | | $3.47 |
| **Annuity Fund** | | | | |
| 01/01/06  To  06/05/06 | 936.00 | | $2.15 | $2,012.40 |
| 06/06/06  To  12/31/06 | 145.50 | | $2.15 | $312.83 |
| | 1,081.50 | | | $2,325.23 |
| **Additional Security Benefit Fund - Journeymen** | | | | |
| 01/01/06  To  06/05/06 | 896.00 | | $1.70 | $1,523.20 |
| 06/06/06  To  12/31/06 | 108.00 | | $1.70 | $183.60 |
| | 1,004.00 | | | $1,706.80 |
| **Additional Security Benefit Fund - 50% Apprentice** | | | | |
| 01/01/06  To  06/05/06 | -- | | $0.60 | $0.00 |
| 06/06/06  To  12/31/06 | 13.00 | | $0.60 | $7.80 |
| | 13.00 | | | $7.80 |
| **Additional Security Benefit Fund - 45% Apprentice** | | | | |
| 01/01/06  To  06/05/06 | 40.00 | | $0.49 | $19.60 |
| 06/06/06  To  12/31/06 | -- | | $0.49 | $0.00 |
| | 40.00 | | | $19.60 |
| **Additional Security Benefit Fund - 40% Apprentice** | | | | |
| 01/01/06  To  06/05/06 | -- | | $0.38 | $0.00 |
| 06/06/06  To  12/31/06 | 24.50 | | $0.38 | $9.31 |
| | 24.50 | | | $9.31 |
| **Sub-Fund** | | | | |
| 01/01/06  To  06/05/06 | 936.00 | | $1.00 | $936.00 |
| 06/06/06  To  12/31/06 | (159.00) | | $1.00 | ($159.00) |
| | 777.00 | | | $777.00 |
| **Administrative and Maintenance Fund** | | | | |
| 01/01/06  To  06/05/06 | 936.00 | | $0.06 | $56.16 |
| 06/06/06  To  12/31/06 | (159.00) | | $0.06 | ($9.54) |
| | 777.00 | | | $46.62 |

Total amount due to (from) funds for R-Electricians          $    8,901.31

To the EIT Benefit Funds Local 134

Our report on the examination of the payroll records of this employer are as follows:

| | |
|---|---|
| Employer: | GALAXY ENTERPRISES, INC. |
| Address: | 1002 BONAVENTURE DR<br>ELK GROVE VILLAGE, IL 60007-0000 |
| Telephone: | (847) 923-1100 |
| Period Covered: | 1/1/2007 - 6/30/2007 |
| Contact: | DON DENTAMARO |
| Date of Examination: | September 18, 2007 |
| Field Auditor(s): | GRANT WORKMAN |
| | |
| Type of Organization: | C-CORP / FRANK MAIDA 50%, DON DENTAMARO 50% |
| Federal ID Number: | 36-3743884 |
| State ID Number: | T213070 |
| Synopsis: | The prescribed audit procedures were performed. |
| | "R" ELECTRICIAN |
| | Dominic Dentamaro, xxx-xx-3064, is the brother of a majority shareholder and hours reported to the EIT Benefit Funds satisfied the "Owner in Fact" clause of the contract for the period 1/1/07-6/30/07.. |
| | See accompanying schedule for exceptions noted. |
| | "Participatory Employees" |
| | No exceptions were noted. |
| Exit Interview: | Reviewed exceptions with Mr.Dentamaro on January 14, 2008. |

EIT Benefit Funds Local 134
Payroll Audit of :        GALAXY ENTERPRISES, INC.

The amounts due to (from) the various funds are as follows:

## R-Electricians

|  | | | Hours | Wages | Rate | Amount Due (Overreported) |
|---|---|---|---|---|---|---|
| Health and Welfare | | | | | | |
| | 01/01/07 | To  06/04/07 | | $4,662.12 | 26.2534% | $1,223.97 |
| | 06/05/07 | To  12/31/07 | | ($6,020.07) | 27.0635% | ($1,629.24) |
| | | | | ($1,357.95) | | ($405.27) |
| Pension Plan #2 | | | | | | |
| | 01/01/07 | To  06/04/07 | | $4,662.12 | 11.0468% | $515.02 |
| | 06/05/07 | To  12/31/07 | | ($6,020.07) | 11.5344% | ($694.38) |
| | | | | ($1,357.95) | | ($179.36) |
| Apprentice & Training Fund | | | | | | |
| | 01/01/07 | To  06/04/07 | | $4,662.12 | 0.9642% | $44.95 |
| | 06/05/07 | To  12/31/07 | | ($6,020.07) | 0.9259% | ($55.74) |
| | | | | ($1,357.95) | | ($10.79) |
| LMCC | | | | | | |
| | 01/01/07 | To  06/04/07 | | $4,662.12 | 0.5234% | $24.40 |
| | 06/05/07 | To  12/31/07 | | ($6,020.07) | 0.5026% | ($30.26) |
| | | | | ($1,357.95) | | ($5.86) |
| Drug Free Alliance | | | | | | |
| | 01/01/07 | To  06/04/07 | | $4,662.12 | 0.0275% | $1.28 |
| | 06/05/07 | To  12/31/07 | | ($6,020.07) | 0.0265% | ($1.60) |
| | | | | ($1,357.95) | | ($0.32) |
| Annuity Fund | | | | | | |
| | 01/01/07 | To  06/04/07 | 266.00 | | $2.15 | $571.90 |
| | 06/05/07 | To  12/31/07 | -- | | $2.15 | $0.00 |
| | | | 266.00 | | | $571.90 |
| Additional Security-Journeyman | | | | | | |
| | 01/01/07 | To  06/04/07 | 164.00 | | $1.70 | $278.80 |
| | 06/05/07 | To  12/31/07 | -- | | $1.75 | $0.00 |
| | | | 164.00 | | | $278.80 |
| Additional Security-55% Apprentice | | | | | | |
| | 01/01/07 | To  06/04/07 | 24.00 | | $0.71 | $17.04 |
| | 06/05/07 | To  12/31/07 | -- | | $0.74 | $0.00 |
| | | | 24.00 | | | $17.04 |
| Additional Security-45% Apprentice | | | | | | |
| | 01/01/07 | To  06/04/07 | 78.00 | | $0.49 | $38.22 |
| | 06/05/07 | To  12/31/07 | -- | | $0.51 | $0.00 |
| | | | 78.00 | | | $38.22 |
| Sub-Fund | | | | | | |
| | 01/01/07 | To  06/04/07 | 214.50 | | $1.00 | $214.50 |
| | 06/05/07 | To  12/31/07 | (67.50) | | $1.00 | ($67.50) |
| | | | 147.00 | | | $147.00 |
| Administrative and Maintenance Fund | | | | | | |
| | 01/01/07 | To  06/04/07 | 214.50 | | $0.06 | $12.87 |
| | 06/05/07 | To  12/31/07 | (67.50) | | $0.06 | ($4.05) |
| | | | 147.00 | | | $8.82 |

Total amount due to (from) funds for R-Electricians          $      460.18